## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STEPHEN CULLISON, | : | 1:10-cv-705 |
| | : | |
| Plaintiff, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| DAUPHIN COUNTY, PA and DONNA | : | Hon. Mildred E. Methvin |
| MILLER, Individually, and  KELLY | : | |
| WOLF, Individually, | : | |
| | : | |
| Defendants. | : | |

### <u>MEMORANDUM</u>

July 24, 2012

**THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:**

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Mildred E. Methvin (Doc. 52) filed May 18, 2012, which recommends that we grant the Defendants' Motion for Summary Judgment. (Doc. 37). Plaintiff Steven Cullison ("Plaintiff" or "Cullison") filed Objections, to which the Defendants have responded. (Docs. 56, 59). For the reasons fully detailed herein, we shall adopt the R&R in its entirety, grant the Defendants' Motion, and close this case.

## I.    STANDARDS OF REVIEW

### A.    Review of Magistrate Judge's Report and Recommendation

When, as here, objections are filed to the report of a magistrate judge, the district court makes a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objections are made. 28 U.S.C. § 636(b)(1); *United States v. Raddatz*, 447 U.S. 667, 674-75 (1980). The court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *Id.* Although the standard of review is *de novo*, 28 U.S.C. § 636(b)(1) permits whatever reliance the district court, in the exercise of sound discretion, chooses to place on a magistrate judge's proposed findings and recommendations. *Raddatz*, 447 U.S. at 674-75; *see also Mathews v. Weber*, 423 U.S. 261, 275 (1976); *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984).

### B.    Summary Judgment

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the

non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the

moving party meets its burden, the burden then shifts to the non-moving party to

show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).  An issue is

"genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find

for the non-moving party, and a factual dispute is "material" only if it might affect

the outcome of the action under the governing law.  *Anderson v. Liberty Lobby,*

*Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely

on allegations of denials in its own pleadings; rather, its response must ... set out

specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The

non-moving party "cannot rely on unsupported allegations, but must go beyond

pleadings and provide some evidence that would show that there exists a genuine

issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).

Arguments made in briefs "are not evidence and cannot by themselves create a

factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent.*

*Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party.  *P.N. v. Clementon Bd. of*

*Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment." *Anderson*, 477 U.S. at 247-48.

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.    Factual Background

Magistrate Judge Methvin undertook an extensive review of the material facts in this case at pages 4-12 of her R&R. (Doc. 52). Thus, we shall only endeavor summarize the undisputed material facts herein. In accordance with the standard of review applicable to a motion for summary judgment, these facts are derived from the record with all reasonable inferences drawn in favor of the non-moving party.

Plaintiff is a 60 year old man who was employed by Dauphin County for five years prior to his discharge on May 20, 2009. (Doc. 1 ¶ 7). Defendant, Dauphin County ("Defendant County" or "County") is a Pennsylvania municipality with its principle place of business at Harrisburg, Pennsylvania. (*Id.*

at ¶ 8). Defendant Kelly Wolf ("Defendant Wolf" or "Wolf") is the Director of the County's Department of Solid Waste Management and Recycling and is being sued in her individual capacity. (*Id*. at ¶ 9). Likewise, Defendant Donna Miller ("Defendant Miller" or "Miller") is an employee of the County and is being sued in her individual capacity. *(Id*. at ¶ 10). Both individual Defendants served in a supervisory role over the Plaintiff during his employment. *Id*. ¶¶ 9-10).

On October 13, 2004, Plaintiff was hired as a part-time Recyclable Material Collector for Dauphin County. (Doc. 45-13 at 2). Prior to his hiring, he was interviewed by Defendant Wolf. (Docs. 45-2 at 10:22-25). During the interview Plaintiff disclosed to Wolf that he had "DVTs [sic] in both legs" as well as a "back condition," but he did not discuss with her how these conditions affected him. (Doc. 37-4 at 11). After working part-time for two years in the position of Recyclable Material Collector, Plaintiff was transferred to a newly-created full-time position of Recycling Maintenance Worker. (Docs. 39, 45 ¶ 33; 45-13 at 9). At this time, Plaintiff had no physical restrictions. (Docs. 39, 45 ¶ 37).

In September of 2006, Plaintiff experienced severe stomach pains when pushing barrels up an incline at work. (Docs. 39, 45 ¶ 65). Shortly thereafter, Plaintiff gave the County a note from his physician stating: "Please amend Mr. Cullison's profile to state 'Limited walking of steps and inclines' and 'no pushing

over 100 lbs.'" (Doc. 45-13 at 20). Plaintiff was instructed by his supervisor to seek assistance to help with duties he was unable to perform. (Docs. 39, 45 ¶ 67). Plaintiff received assistance about three-quarters of the times he asked; otherwise he performed the duties in question himself without reporting to Defendants that the requested assistance never came. (*Id*. at ¶¶ 68-71).

In March 2008, Plaintiff told Wolf that he was unable to clean up a briar patch due to the DVT in his legs. (*Id*. at 72). As of March 4, 2008, Plaintiff was told not to come to work because of his medical condition. (Doc 45-6 at 12:15-13:7). Defendant Wolf denied having any hand in that decision (Doc. 45 at 172:21-173:6). Defendant Miller also denied making the decision to tell Plaintiff to not come to work, claiming it was Plaintiff's physician who made that decision. (Doc. 45-4 at 21:21-22:5).

The County instructed Plaintiff to not return to work until clarification was received as to his functional restrictions. (Doc. 45-4 at 22:9-15). As a result, Plaintiff did not work from March 4 to April 9, 2008, a total of 184 working hours. (Doc. 45-13 at 126). Plaintiff testified that no one from the County ever told him that he could take FMLA leave or that he could possibly apply for unemployment benefits during this absence. (Doc. 45-3 at 185:2-10).

Miller wrote Plaintiff a letter on April 9, 2008 stating that Plaintiff was

6

required to wear personal protective equipment " at all times" while doing any outside garden or work "that could risk [his] health[.]" (Doc. 45-13 at 44). Plaintiff returned to work in the same position on April 10, 2008. (Doc. 45-13 at 126). Plaintiff contends that when he returned to work : "he was subjected to a series of [ongoing] harassment, including being denied pay, being subject to discriminatory comments, and eventually fired." (Doc. 45 ¶ 81).  He further claims that he was the only employee in the Department forced to wear a Tyvek suit to protect him from poison ivy and that his employers refused to allow him to have a chair in the bathroom to help him change clothes. (*Id*. at ¶ 85, 88, 89).

On May 5, 2009, Plaintiff was driving his County-owned vehicle when an accident occurred that resulted in damage to the passenger-side mirror. (Docs. 39, 45 ¶ 106). Plaintiff submitted the reporting forms required by County policy later the same day. (*Id*. at ¶ 107). The form indicated the time of the accident, location, conditions, and a report of the circumstances that led to the accident. (Doc. 45-28 at 2, 3).  Plaintiff reported that a "bird (Hawk) struck  pass[enger] side mirror & broke it." (Docs. 39, 45 ¶ 109, Doc. 45-28, at 2). Plaintiff testified in his deposition that a fellow employee, Jeffery Karl, witnessed the accident and saw something fall to the ground from Plaintiff's vehicle. (Doc. 45-28, Exhibit 27).

Defendants conducted an investigation into the accident and came to the

opinion that Plaintiff's account of the story was incomplete and could not be accurate. (Doc. 45-37 at 2). On May 20, 2009, the County sent a formal termination letter signed by "Kelly J. Wolf" as "Manager," and cited "providing false information" as the reason for termination. (Doc. 45-3 at 192:3-5).

After Plaintiff was terminated he was replaced by a 19 year old man with no disabilities. (Doc. 45-17 at 4, 5; Doc. 45-16 at 7, 9).

**B.     Procedural History**

Plaintiff filed the instant action with this Court on April 2, 2010. (Doc. 1). The Complaint was amended on January 4, 2011 after Plaintiff received his right to sue letter from the EEOC. (Doc. 24-1, Doc. 51). The Plaintiff alleges that the Defendants, Dauphin County, Kelly Wolf and Donna Miller (1) interfered with Plaintiff's enjoyment of his rights under the Familiy Medical Leave Act (FMLA), 29 U.S.C. § 2601; (2) retaliated against Plaintiff for excercising his rights under FMLA; (3) discriminated against him based on his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and the Pennsylvania Human Relations Act (PHRA), 43 Pa. Cons. Stat. §§ 951-63; and, (4) discriminated against him based on his disabilities in violation of the Americans with Disabilities Act (ADA), 42 U.S.C.  12101, and the PHRA. (Doc. 51 ¶¶ 88 - 190).

Defendants filed the instant Motion for Summary Judgment on September 1, 2011. (37-1 to 37-22). On September 7, 2011 this Court referred the Motion to Magistrate Judge Mildred Methvin. (Doc. 40). After receiving full briefing on the Motion, the Magistrate Judge issued the instant R&R. (Doc. 37).

As noted above, Plaintiff filed Objections to Magistrate Judge Methvin's R&R, to which the Defendants have responded. (Docs. 56, 59). This matter is now ripe for our review.

### C.     Report and Recommendation

In her R&R, Magistrate Judge Methvin undertook extensive review of the arguments raised by the parties and recommended that the Defendants' Motion for Summary Judgment be granted.[1]

First, Magistrate Judge Methvin addressed Plaintiff's claims of interference and retaliation under the FMLA and found that the Defendants are entitled to summary judgement on both FMLA claims. She reasoned that to establish an interference claim under FMLA, a plaintiff must show that the failure to advise a plaintiff of his rights under FMLA rendered him unable to exercise that right in a

---

[1] Magistrate Judge Methvin addressed Defendant Miller's argument that she was not Plaintiff's "employer." Magistrate Judge Methvin reasoned that, when viewing the totality of the circumstance, there is substantial evidence exists for a fact-finder conclude that Millers was Plaintiff's employer for FMLA purposes. Therefore, Magistrate Judge Methvin found that Miller is not entitled to summary judgement for Counts I and II based on this argument.  We agree with the Magistrate Judge's conclusion.

meaningful way, thereby causing injury. Concluding that the Plaintiff could not demonstrate any injury or prejudice resulting from Defendant's failure to advise him of his rights, Magistrate Judge Methvin recommended summary judgment on this claim.

Likewise, Magistrate Judge Methvin recommends summary judgment on Plaintiff's FMLA retaliation claim because Plaintiff failed to demonstrate a causal connection between his FMLA-qualified leave and his termination.[2] Magistrate Judge Methvin found that because Plaintiff's FMLA-qualifying leave and the alleged retaliation were more than a year apart and Plaintiff presented no further evidence to show ongoing antagonism, Plaintiff failed to establish a *prima facie* case of FMLA retaliation and summary judgment should be granted on that claim.

Next, Magistrate Judge Methvin addressed Plaintiff's claim of age discrimination under the ADEA and the PHRA. Magistrate Judge Methvin reasoned that, while Plaintiff established a *prima facie* case for age discrimination, he failed to adequately rebut the Defendants' assertion that there was legitimate, non-discriminatory, reason for Plaintiff's termination, specifically, falsifying records. Therefore, she recommended that this Court grant summary judgment in

---

[2] The Third Circuit has stated that a causal connection is typically demonstrated by the presence of close temporal proximity and evidence of ongoing antagonism. *Abramson v. Wm. Patterson College of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001).

favor of the Defendants on the age discrimination claims.

Magistrate Judge Methvin next assessed whether Plaintiff's disability discrimination claims under the ADA and PHRA could withstand Defendant's Motion for Summary Judgement. The parties agree that a *prima facie* case of disability discrimination has been established. However, Magistrate Judge Methvin found that because no similarly situated employees were treated the same way Plaintiff was treated, Plaintiff failed to establish that the Defendants' justification is pretext of a discriminatory motive. Furthermore, Magistrate Judge Methvin reasoned that because Plaintiff did not contest Defendant's position on the requirement to accommodate an employee's disability under the ADA, Plaintiff waived his opposition to the Motion in this regard. Thus, she recommended that this Court grant summary judgment in favor of Defendants for the disability discrimination claims.

As a final matter, Magistrate Judge Methvin found that Plaintiff is not entitled to punitive damages on any of his claims, noting that punitive damages are not available under FMLA, the PHRA, nor any action under § 1983 against a government entity or officers acting in his or her official capacity. Thus, Magistrate Judge Methvin recommends that Plaintiff's punitive damages claim be stricken.

### D.    Objections

In his objections to the R&R, Plaintiff first argues that he has established a claim of FMLA interference and retaliation because the Defendants failed to provide him with FMLA leave and failed to inquire as to whether his absence qualified under the FMLA.  Plaintiff argues that Magistrate Judge Methvin failed to recognize that Plaintiff established causation, prejudice and actual harm for the purposes of his FMLA interference and retaliation claims.  Further, Plaintiff argues that he was subjected to a series of adverse actions, including termination of his employment, after he informed his employer of potentially FMLA qualifying events. (*Id*. at 11). Additionally, Plaintiff argues that Magistrate Judge Methvin incorrectly disregarded the fact that Defendants failed to provide Plaintiff with FMLA leave for his absences in April 2009 and instead terminated him shortly thereafter in May 20, 2009. (*Id.* at 11).

Plaintiff next asserts that Magistrate Judge Methvin erred in her determination that he did not sufficiently establish that the Defendants' justification for his discharge was pretext for age discrimination under the ADEA and PHRA. (*Id*. at 12-19). Plaintiff argues that it was inappropriate at the summary judgment stage for Magistrate Judge Methvin to weigh the evidence and determine that Plaintiff's assertions were insufficiently probative of discrimination. (*Id*. at 16-18). He argues that because the meaning of certain words or statements must be

12

seen in a particular context, inflection, or tone of voice, determining the meaning of ambiguous terms is the role of the jury and inappropriate for summary judgment. (*Id*. at 14, 18).

Finally, Plaintiff contends that, in contrast to Magistrate Judge Methvin's view, he adequately established pretext for purposes of his disability discrimination claims. (*Id*. at 21). Plaintiff acknowledges that the Defendants put forth a nondiscriminatory reason for his termination, *to wit*, falsifying documents. However, he argues that the Defendant's stated reason for termination is merely pretext for a discriminatory motive. (*Id*. at 21).

## III.   DISCUSSION

We will address each of the Plaintiffs' arguments *seriatim* and, for the reasons that follow, will ultimately adopt Magistrate Judge Methvin's R&R in its entirety.

### A.   FMLA Claims

The FMLA provides that "an eligible employee is entitled to 12 work-weeks of leave during any given 12-month period for certain qualifying events, including a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612 (a)(1)(D). The FMLA entitles eligible employees to reinstatement at the end of FMLA leave to the position of

employment held before leave or to an "equivalent position." *Id*. at §§ 2614

(a)(1)(A), (B). FMLA creates two types of claims: "interference claims," in which

an employee asserts that an employer denied or otherwise interfered with his or her

substantive rights under the FMLA, and "retaliation claims," in which an employee

asserts that an employer discriminated against the employee because he or she

engaged in activity protected by the Act. 29 U.S.C. § 2615 (a). Plaintiff here

asserts claims for both interference and retaliation.

### 1.     Interference

"[T]o assert a claim of interference, an employee must show that he was

entitled to benefits under the FMLA and that his employer illegitimately prevented

him from obtaining those benefits." *Sarnowski v. Air Brooke Limousine, Inc.,* 510

F.3d 398, 401 (3d Cir.2007). To establish an interference claim under FMLA for

the purpose of defeating a motion for summary judgment, a plaintiff must

demonstrate: (1) he is eligible employee; (2) defendant is covered employer; (3)

plaintiff was entitled to leave under FMLA because of serious health condition; (4)

he gave defendant notice of his intention to take leave; and (5) defendant denied

plaintiff FMLA benefits to which he was entitled. *Johnson v. Cmty. Coll. of*

*Allegheny County*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008). Further, the Third

Circuit Court of Appeals has held that a plaintiff may establish an interference

14

claim only if he or she is able to establish that the failure to advise an employee of FMLA rights rendered a plaintiff "unable to exercise that right in a meaningful way, thereby causing injury." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143 (3d Cir. 2004).

The Plaintiff asserts that he provided the Defendants with enough information about his condition to meet the notice requirements and that the Defendants breached their duty to Plaintiff by not designating his March to April, 2008 leave as FMLA-qualifying. (Doc. 56 at 10). Additionally, Plaintiff alleges that he was subjected to a series of adverse actions after he informed his employer of his potentially FMLA qualifying condition.

In order to satisfy the notice requirement of FMLA, an employee shall provide "at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave." 29 C.F.R. § 825.302. When an employee seeks leave for the first time for a FMLA–qualifying reason, the employee need not expressly assert rights under the FMLA or even mention the FMLA. *Id.*; *Scott v. UPMC*, 435 F. App'x 104, 107 (3d Cir. 2011). The Third Circuit has held that the critical question is whether a plaintiff "provided his employer with reasonably adequate information under the circumstances to understand that the employee seeks leave under the FMLA." *Sarnowski v. Air*

15

*Brooke Limousine, Inc.*, 510 F.3d 398, 402 (3d Cir. 2007). We find that the Plaintiff has met this standard when he provided the Defendants with a note from his physician on his need for accommodation for his disability because a reasonable jury could conclude that the Plaintiff gave sufficient information to the Defendants such that the County would be on notice that his situation qualified for FMLA leave.

The Defendants do not dispute that FMLA requires them to alert Plaintiff of his rights. Instead, the Defendants argue that Plaintiff was not denied FMLA benefits. Defendants argue that, under County policy, an employee must first utilize all accrued vacation, sick and personal leave before beginning FMLA leave. Thus, the Defendants were not required to designate Plaintiff's March to April 2008 leave as FMLA leave because he had not exhausted his accrued leave during his absence. (Doc. 59 at 4). Magistrate Judge Methvin was correct when she determined that this policy is not inconsistent with the FMLA statute. According to the FMLA, "an eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee." 29 U.S.C.A. § 2612 (d)(2)(B). Thus, because Plaintiff was never in fact denied FMLA leave, we agree with Magistrate Judge Methvin and find that the County did not violate Plaintiff's rights under FMLA.

Further, notwithstanding the failure of the Defendants to apprise the Plaintiff of his FMLA rights, Magistrate Judge Methvin also correctly reasoned that Plaintiff cannot establish a claim for FMLA interference in the absence of injury or prejudice resulting therefrom. *See Conoshenti* 364 F. 3d at 143. Plaintiff argues that he was subjected to a series of adverse actions after he informed his employee of his potentially FMLA-qualifying events. While his allegations could show *retaliation* if a causal link is demonstrated, Plaintiff was not injured or prejudiced by Defendants failure to advise him of his FMLA rights. Thus, Plaintiff has failed to establish a claim of interference and summary judgment in favor of the Defendants is therefore warranted on this claim.

## 2.   Retaliation

As correctly stated by Magistrate Judge Methvin, in order to establish a *prima facie* case for retaliation under the FMLA, a plaintiff must show: (1) that he engaged in protected activity, (2) that the employer took adverse action against him, and (3) that a causal link exists between the protected activity and the employer's adverse action. *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997). It is clear from the record that Plaintiff met the first two elements; Plaintiff took FMLA-qualifying leave[3] in March and April, 2008 and he later

---

[3] While the County policy requiring that an employee exhaust all accrued leave prior to taking FMLA leave is appropriate under the statute, Plaintiff's leave did qualify for FMLA and

suffered an adverse employment decision when he was terminated in May, 2009. The parties disagree, however, on whether the decision by the County to terminate the Plaintiff was causally related to his FMLA leave. The Defendants argue that Plaintiff was fired due to his alleged falsification of documentation concerning an accident with a County-owned vehicle while Plaintiff contends that his firing was in response to his FMLA leave.

When determining whether there was a causal link between FMLA leave and an adverse employment decision, the courts can consider circumstantial evidence and draw inferences in favor of the non-moving party. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 283 (3d Cir. 2000). Third Circuit cases in which the required causal link has been at issue have often focused on the temporal proximity between the employee's protected activity and the adverse employment action. Temporal proximity is "an obvious method by which a plaintiff can proffer circumstantial evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Kachmar* 109 F.3d at 177; (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)).

---

is thus considered for purposes of establishing a *prima facie* case of retaliation to be a substitution for paid FMLA leave. *See,* 29 U.S.C.A. § 2612 ("An eligible employee may elect, or an employer may require the employee, to substitute any of the accrued paid vacation leave, personal leave, or family leave of the employee for leave provided under" the Act).

However, temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not "unusually suggestive." *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). Further, while temporal proximity may allow an inference of a causal connection to be drawn, the lack of temporal proximity does not necessarily mean that there is no causal connection. *Kachmar* 109 F.3d at 177. Where there is a lack of temporal proximity, circumstantial evidence of a "pattern of antagonism" following the protected conduct can also give rise to an inference of a causal connection. *Id.*   Defendants argue that Plaintiff is unable to establish a causal connection between his March-April 2008 leave and his May 2009 firing given the lapse of over a year between occurrences. Defendants argue that an adverse employment action that occurs many months after FMLA leave is insufficient to establish the necessary causal connection. *See*, *e.g. Williams* 380 F.3d at 760 (over two months elapsed and was found to not be close enough to  be unduly suggestive).

Plaintiff argues that in analyzing his FMLA retaliation claim, Magistrate Judge Methvin failed to recognize that his April 2009 leave that should have been seen as FMLA qualifying. (Doc. 56 at 11). If this evidence was properly introduced, Plaintiff argues it would show close temporal proximity, as his termination from his employment occurred only one month after the leave.

However, Plaintiff failed to bring this claim to the Court's attention until it was discussed in his brief in opposition to the Defendant's Motion for Summary Judgment. "It is well settled that courts need not consider additional claims that are raised for the first time in briefing." *Treaster v. Conestoga Wood Specialties Corp.*, 4:09-CV-632, 2010 WL 2606481 (M.D. Pa. June 25, 2010) *See, Melrose, Inc. v. City of Pittsburgh,* 2008 WL 4449687, *13 (W.D.Pa. Sept.2008) ("It is well established that a plaintiff may not attempt to amend a complaint through a brief in opposition to a motion for summary judgment."); *Johnson v. Community College of Allegheny County,* 566 F.Supp.2d 405, 449 (W.D.Pa.2008) (it is inappropriate for plaintiff to raise additional interference allegations for the first time in her opposition brief; thus claims are improperly before the court). Thus, Magistrate Judge Methvin was correct in finding that the April 2009 leave was not appropriately before the Court and we need not consider it for the purposes of this Motion.

With temporal proximity lacking, Plaintiff must provide other information showing a link or evidence of a "pattern of antagonism" following the protected conduct to survive summary judgment on this claim. Plaintiff points to four events that occurred between his leave and his firing to show a pattern of antagonism: (1) an April 2008 warning by supervisors concerning a chair in the shower; (2) a

December 2008 comment by his employer that she was going to hire a "young,

physically fit guy" for a position unrelated to the Plaintiff's employment, (3) a

comment by Plaintiff's co-worker suggesting the co-workers grandfather could

"ride circles around" Plaintiff; and (4) an "attempt" to write-up the Plaintiff in

February 2009.

Magistrate Judge Methvin found that despite these events, Plaintiff

presented no evidence that established a causal connection to his FMLA leave. The

events cited by Plaintiff are either isolated, unrelated to his leave, or are comments

made by someone who is not involved in employment decisions.  We agree with

the Magistrate Judge that no reasonable jury could find that these isolated and

sporadic events to be retaliatory in nature. Accordingly, summary judgment is

appropriate on Plaintiff's FMLA retaliation claim.

### B.     Age Discrimination Claims

The ADEA and the PHRA prohibits discrimination by employers on the

basis of age. *See* 29 U.S.C. § 623; 43 Pa. Con. Stat. § 954(a). Magistrate Judge

Methvin correctly found that the Plaintiff established a *prima facie* case for age

discrimination by offering evidence that (1) he is a member of a protected class

(over 40 years old); (2) he was qualified for the position; (3) he was subject to an

adverse employment decision; and (4) the employer filled the position with a

significantly younger person.

Here, Plaintiff only put forth circumstantial evidence to support his claim of age discrimination. In the absence of direct evidence, the Third Circuit examines ADEA claims under the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817 (1973).

> *McDonnell Douglas* provides that, once the employee establishes a *prima facie* case, the burden of production (i.e., of going forward) shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employer's adverse employment decision. If the employer makes that showing, the burden of production shifts once again to the employee to establish that the employer's proffered justification for the adverse action is pretextual. *Tex. Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). Throughout this burden-shifting exercise, the burden of persuasion, "including the burden of proving 'but for' causation or causation in fact, remains on the employee." *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d Cir. 2009).

If an employer offers evidence providing a legitimate reason for the adverse employment decision, a plaintiff can establish that the employer's justification for the adverse employment action is pretextual by identifying "some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

In 2009, the United States Supreme Court interpreted key language of the

ADEA  as requiring a plaintiff to establish that his age was the "but-for" cause of the employer's adverse action.  *Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 177 (2009). However, to discredit the employer's articulated reason for the adverse employment action for the purpose of summary judgment, the plaintiff need not produce evidence that established "but for" causation. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir. 1998). A plaintiff must only show that discrimination was more likely than not a cause for the employer's action by pointing to evidence with sufficient probative force that a factfinder could conclude by a preponderance of the evidence that age was a motivating or determinative factor in the employment decision. *Id.*

In order to give rise to an inference of discrimination, Plaintiff first points a single statement by a co-worker that the co-worker's 86 year old father could "ride circles around you," and argues that an inference of age discrimination can drawn by this statement. Magistrate Judge Methvin was correct when she found that because this statement was neither made by a decision-maker nor was it related to the decision-making process, his co-workers statement is of no value to Plaintiff's discrimination claim.[4]

_____

[4] In order to differentiate which comments may demonstrate discriminatory intent, courts in this Circuit look at a variety of factors including whether remark was made by a decision maker or a low-level co-worker and the context in which the remark was made. *Lloyd v. Washington & Jefferson Coll.*, WL 1575448 (W.D. Pa. May 30, 2007).

Plaintiff next points to the evidence of remarks made by Defendant Wolf that she would be hiring a "young physically fit guy" for the position of warehouse worker. (Docs. 39, 45 ¶ 152). Plaintiff further testified that Wolf told him not to apply for the position. (*Id*. at ¶ 153). Magistrate Judge Methvin concludes that Defendant Wolf's statement does not give rise to an inference of discrimination because Defendant's Wolf statement was a "stray remark" unrelated to Plaintiff's employment and occurring approximately five months before he was terminated. We agree. Stray remarks by decision makers unrelated to a decision process on employment are rarely given great weight, particularly if they were made months before the decision. *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F.2d 509, 545 (3d Cir. 1992). Because Defendant Wolf's alleged statement was approximately five months prior to Plaintiff's termination and the comment involved the County's hiring of an additional employee for a position unrelated to the Plaintiff, an inference of discrimination cannot be drawn.

Magistrate Judge Methvin also states in her R&R that the evidence showing that Defendant Wolf both hired and fired the Plaintiff is relevant to show that no discrimination has occurred.  Plaintiff objected to Magistrate Judge Methvin's use of the "same-actor" defense because he claims it the defense is outdated and the

facts do not lend themselves to using this principle.

The same actor doctrine originated in *Proud v. Stone*, 945 F. 2d 796 (4th Cir. 1991). The *Proud* court held that in cases where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer. *Id*. at 797. However, the *Proud* rule has not been adopted by this Circuit. *See*, *Frantz v. Ferguson Enterprises, Inc.*, WL 222419 (E.D. Pa. Jan. 28, 2009). Instead, Third Circuit courts have found, and Magistrate Judge Methvin correctly noted, that evidence that shows the same individual hired and fired a plaintiff is "simply evidence like any other and should not be accorded any presumptive value." *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 496 (3d Cir. 1995).

We agree with the Plaintiff that because the time between the hiring and firing of Plaintiff by Defendant Wolf, the *Proud* rule does not apply to the instant situation. However, it is clear that Magistrate Judge Methvin did not rest her conclusion that Plaintiff failed to meet his burden of establishing pretext based solely on the same-actor defense. Rather, Magistrate Judge Methvin's conclusion rested on her determination that Plaintiff failed to show that Defendant Wolf's stray and isolated statement could lead a reasonable fact finder to conclude that age

was a motivating factor in his firing.

Plaintiff next contends that summary judgment is not appropriate because Defendant Wolf's statement can only be understood within a particular context that requires examining the surrounding factors including context, inflection, tone of voice, local custom, and historic usage. Plaintiff argues that such analysis is the function of a jury and that on summary judgment, inferences must be viewed in the light most favorable to the party opposing the motion.

In order to preclude summary judgment, the plaintiff must be able to adduce evidence, whether direct or circumstantial, from which a reasonable jury could conclude that the defendant's explanation is *incredible*. *Id.* (emphasis added). We find that Plaintiff did not meet his burden of establishing that Defendants' stated reason for his termination was incredible. Because we find that Defendant Wolf's allegedly discriminatory statement was stray and temporarily isolated, and that stray remarks by decision makers unrelated to an employment decision made months before any employment decision are not given much weight, we shall grant summary judgment in favor of the Defendants on this claim.

### C.    Disability Discrimination Claims

Similar to the age discrimination claims, testing Plaintiff's disability discrimination claims under ADA and the PHRA requires application of the

*McDonnell Douglas* test discussed above. Accordingly, Plaintiff must first establish a *prima facie* case of discrimination.  Since the parties agree that a *prima facie* case of disability discrimination there is no need to conduct further factual analysis on this pint.

As the *prima facie* case has been established, the burden shifts to the Defendants to articulate a legitimate non-discriminatory reason for their actions. As discussed above, the Defendants assert that the basis for terminating the Plaintiff was the falsification of documents related to the May 5, 2009 accident that occurred when Plaintiff was driving a County-owned vehicle. Because the Defendants have asserted a non-discriminatory justification for terminating the Plaintiff, the burden returns to the Plaintiff to establish, through evidence, that the reason proffered by the Defendants is pretext for disability discrimination.

Plaintiff contends that he has established pretext for purposes of this and all other claims by showing that: (1) similarly situated employees were treated more favorably; (2) Defendants deviated from their own policies in relation to Plaintiff's termination; and (3) the Defendants' non-discriminatory reason for termination includes contradictions, including testimony by Defendant Wolf stating that Plaintiff did not lie on the May 2009 accident report.[5]

---

[5] Since we already determined that Plaintiff failed to establish a *prima facie* case for his FMLA claims, and failed to present evidence that could lead a reasonable factfinder to conclude

**1.      Similarly situated employees were treated more favorably**

Plaintiff contends that there were similarly-situated, but not disabled, employees who were treated more favorably than him, suggesting that the reason behind the differential treatment was a discriminatory motive. Magistrate Judge Methvin found that there were no similarly situated persons to Plaintiff because no other individuals were accused of having falsified documents relating to an accident of a County-owned vehicle. We agree.

To be similarly-situated, a comparator employee must be similarly-situated in all relevant respects. *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). Specifically, we have said that similarly-situated employees must "have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct of the employer's treatment of them for it." *Ogden v. Keystone Residence*, 226 F. Supp.2d 588, 603 (M.D. Pa. 2002). While the Plaintiff pointed to numerous comparator individuals that  were in accidents in County-owned cars and violated County policy in some respect, none of the individuals were accused of falsifying documents. Accordingly, we agree with Magistrate Judge Methvin that the Plaintiff has failed to demonstrate

---

that age was a motivating factor in his firing, these arguments need to be addressed only in the context of Plaintiff's disability discrimination claims.

that similarly-situated individuals were treated differently and cannot demonstrate pretext on this basis.

**2.      Defendants' failure to follow their own policy**

Plaintiff next maintains that the County failed to follow its own policies when they discharged him from his position. Magistrate Judge Methvin undertook an extensive review of the County's employee handbook and found that the following disiplinary measures may be issued with respect to employee behavior: (1) verbal reprimand; (2) written reprimand; (3) suspension; or (4) discharge. Magistrate Judge Methvin found that the Defendants were not in violation of their policy with respect to discharging the Plaintiff because the County policy does not state that the above listed disciplinary measures must be sequentially applied. Further, failure to follow internal disciplinary procedures does not suggest either discriminatory pretext absent evidence of similarly situated individuals who were treated differently with respect to such policies. *Maull v. Div. of State Police*, 39 F. App'x 769, 774 (3d Cir. 2002). Because we have alredy found that there were no similarly-situated individuals who were treated differently we find that Plaintiff cannot establish pretext on this basis.

**3.      Defendant's non-discriminatory reason for termination**

**includes contradictions**

As stated above, Plaintiff can establish pretext by pointing to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action. *Fuentes*, 32 F.3d at 764. Plaintiff may make a sufficient showing of pretext if he demonstrates weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' articulated non-discriminatory reasons for his termination such that a reasonable factfinder could rationally find them unworthy of credence. *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 283 (3d Cir. 2001).

Plaintiff asserts that the testimony Defendant Wolf gave prior to the instant litigation was inconsistent with her June 2011 deposition. Prior to litigation Defendant Wolf stated that Plaintiff was not fired for any other reason than providing false information on the May 5, 2009 accident. (Doc. 45 ¶ 1). Plaintiff contends that in her June 2011 deposition, Defendant Wolf declined to characterize the Plaintiff as lying on the forms related to the accident. (Doc. 45-3, p. 130-134).

Like Magistrate Judge Methvin, we reviewed the relevant transcripts and do not agree with Plaintiff that Defendant Wolf's testimony is inconsistent. Defendant Wolf clearly indicated in her deposition that she considered Plaintiff's report of the

accident to contain false information. Accordingly, there is no inconsistency upon which the Plaintiff can establish pretext. Thus, we find that Plaintiff has failed to meet his burden of establishing pretext for his disability discrimination claim and therefore, summary judgment in favor of Defendants is appropriate on this claim.

## IV.    CONCLUSION

Accordingly, based on all of the foregoing, we shall adopt Magistrate Judge Methvin's R&R in its entirety as stated herein. Summary judgment shall be granted in favor of the Defendants on all claims. An appropriate order shall issue.